# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JOSHUA M. HAM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 2:17-CV-105-HAB |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Joshua M. Ham's ("Ham") Brief (ECF No. 19), seeking judicial review of Social Security Administration's Decision (ECF No. 10 at 28–39) (the "Decision") dated November 4, 2015. Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration (the "Commissioner") filed her Memorandum in Support of the Commissioner's Decision (ECF No. 23) on January 2, 2018. Ham filed his Reply Brief (ECF No. 26) on March 2, 2018. This matter is now ripe for a determination.

## CASE BACKGROUND

Ham filed his application for Supplemental Security Income on December 4, 2012. That application was denied on March 5, 2013. A Request for Reconsideration was timely filed on or around April 12, 2013, which Request was denied on May 13, 2013. Ham then filed a Request for Hearing by Administrative Law Judge on or around June 18, 2013. That hearing was held on September 9, 2015. On November 4, 2015, the Administrative Law Judge ("ALJ") entered the Decision finding that Ham was not disabled. A Request for Review of Hearing Decision/Order was filed on Ham's behalf on December 23, 2015. That Request was denied by the Appeals

Council on January 26, 2017. The determination by the Appeals Council constituted a final decision of the Commissioner. Ham timely filed his Complaint on March 6, 2017, which initiated this judicial review proceeding.

## ALJ'S DECISION

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity ("SGA"). *Id.* The ALJ determined that Ham had not engaged in SGA since December 4, 2012, the date of his application. (ECF No. 10 at 30).

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under § 416.920(c). The ALJ determined that Ham had the following severe impairments: lumbar spine degenerative disc disease, scoliosis, chronic obstructive pulmonary disease, obesity, and gout. (ECF No. 10 at 31). The ALJ found that each of these conditions caused more than a minimal limitation in Ham's ability to work, and therefore were "severe" for the purposes of the Social Security Act. (*Id.*).

The ALJ additionally determined that, although Ham suffered from hypertension and depression, these conditions were non-severe. (*Id.* at 31–33). With respect to the hypertension, the

ALJ noted that Ham suffered from no related symptoms, and that the condition was generally controllable with medication. (*Id*. at 31). The ALJ applied 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00C in evaluating Ham's mental condition. She found that he had mild limitations in his activities of daily living, no more than mild limitations in his social functioning, no more than mild limitations in his concentration, persistence, and pace, and no episodes of decompensation. (*Id*. at 32).

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 416.920(d). But, if the impairment(s), either individually or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do, despite his limitations—to determine whether he can perform "past relevant work" (§ 416.920(a)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience" (§ 416.920(a)(4)(v)).

The ALJ determined that Ham's impairments, considered alone or in combination with each other, did not meet or equal one of the listed impairments. (ECF No. 10 at 33). The ALJ then determined that Ham had the RFC to:

> lift and carry 20 pounds occasionally and less than 10 pounds frequently, to stand and/or walk for a total of 2 hours during an 8-hour workday, and to sit for 6 hours during an 8-hour workday; however, the claimant needs the option to alternate his position from sitting to standing for 10 minutes each hour. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but he should never climb ladders, ropes, or scaffolds and never crawl. The claimant should avoid concentrated exposure to extreme heat, wetness, humidity, fumes,

odors, dusts, gases, poor ventilation, hazards, and vibrations. The claimant can occasionally reach overhead bilaterally.

(*Id*.). Given Ham's RFC, the ALJ determined that he could not perform any past relevant work, but that, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Ham could perform. (*Id*.). Accordingly, the ALJ concluded that Ham was not disabled from the date of his application to the date of the Decision.

In reaching her determination, the ALJ accepted Ham's testimony that he suffered adverse symptoms because of his impairments, but found that Ham's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id*. at 34). She reached this conclusion based upon a perceived disconnect between the objective medical evidence and Ham's subjective complaints. Ham identified the following physical symptoms and limitations in his initial disability report:

> The claimant alleged that he is unable to work due to scoliosis, depression, and morbid obesity. The claimant alleged that he has pain in his hip and back, which worsened in April 2013. The claimant alleged that he can only sit and stand for short periods of time. At the hearing, the claimant testified that he lies down during the day due to back pain. He testified that his medications make him drowsy. The claimant testified that his average pain is 5/10 with medication. He testified that he has back pain and hip pain. The claimant testified that he can sit for 10 minutes, can stand for three minutes, can walk ½ the length of the house, and can lift ½ gallon of milk. The claimant testified that he is going to physical therapy twice a week. The claimant testified that his left hand goes numb with use.

(*Id*.).

The ALJ considered the following medical evidence in evaluating Ham's subjective complaints.

A. *Low Back Pain*

Ham first sought treatment for his low back pain on July 31, 2014. During that visit, Dr. Kamaljeet Girn observed that Ham walked with a limp and had a limited range of motion but had

4

normal strength. Ham had a standing scoliosis survey on August 21, 2014, which showed an apex of the scoliotic curve in the thoracic spine at T8 and 60 degrees, and the apex in the lumbar spine at L3 and 58 degrees. As a result of these findings, Dr. Girn referred Ham for spinal surgery, but there was no evidence that Ham ever pursued this referral. Instead, Ham did not seek treatment for his back again until April 10, 2015, when he went to Dr. Daniel Cha for pain management. Dr. Cha noted that Ham suffered from moderate to severe pain with palpitation and motion, but that Ham exhibited normal strength and a negative straight leg raise. Dr. Cha also noted that Ham was able to ambulate with difficulty.

Ham underwent a lumbar spine MRI on April 24, 2015. That scan showed mild spinal canal stenosis and mild bilateral neural foraminal stenosis at L1-2 and L2-3, severe spinal canal stenosis and severe bilateral neural foraminal stenosis at L3-4, mild spinal canal stenosis and mild bilateral neural foraminal stenosis at L4-5, and minimal spinal canal stenosis and minimal neural foraminal stenosis at L5-S1. Ham underwent pain injections to treat his back pain but received only minimal relief.

B.   *COPD*

On February 12, 2013, Dr. Mutena Korman observed that Ham had reduced breathing sounds and his lungs showed poor aeration. At that time, Ham smoked a half a pack of cigarettes per day. There is no record of any pulmonary function test and Ham did not report significant respiratory symptoms. Ham subsequently stopped smoking in April 2014.

C.   *Gout*

Ham suffers infrequent flare ups of his gout. The records show that Ham suffered flare ups in February 2012, September 2012, and June 2015. At each of his medical visits to address his flare ups, Ham is reported to have normal strength and range of motion.

D.  *Obesity*

Ham is 5'10" and at the time of his hearing weighed 477 pounds. This gave him a body mass index of 68.5. As a result, Ham was qualified as having Level III, or extreme, obesity.

E.  *Ham's Credibility*

Since the ALJ determined that Ham complained of more limitations than were supported by the objective evidence, the ALJ considered various factors set out in 20 C.F.R. § 416.929(c) in determining Ham's credibility. First, the ALJ noted that Ham had a minimal work history prior to the alleged onset of his disability, which she determined raised a question as to whether his lack of work history was due to his impairments. Second, Ham received infrequent medical treatment for his impairments. Finally, Ham's claims of medication side effects and manipulative limitations were not reported to any of his treating professionals.

**LEGAL DISCUSSION**

A.  **Standard of Review**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court examines the entire record; however, it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 305–06. The Court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [the ALJ's] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**B.**     *Analysis*

Ham raises two issues on appeal. First, Ham argues that the ALJ "failed to follow Social Security Regulations in evaluating the medical opinion evidence." (ECF No. 19 at 3). Second, he asserts that the ALJ's RFC assessment "fails to include all of Mr. Ham's impairments in combination; contains serious factual mistakes and omissions; and is not supported by substantial

evidence." (*Id*.). This Court agrees that the ALJ gave undue weight to the bare assertions of the state agency medical consultants, and that the RFC assessment is based, at best, on an incomplete recitation of the medical facts in the record. Accordingly, this matter will be remanded for further proceedings.

The Court finds the ALJ's RFC discussion failed to properly consider or weigh the medical evidence in the record. These issues begin at the very start, where the ALJ states that Ham's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (ECF No. 10 at 34). In making this statement, the ALJ ignores the fact that both Dr. J. Sands and Dr. Jerry Smartt, Jr., the state agency medical consultants in this case, determined that Ham's statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by the medical evidence alone. (*Id*. at 126, 136). While it is true that the ALJ is not bound by the findings of the state agency medical consultants, she "may not ignore these opinions and must explain the weight given to the opinions in their decision." *Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council*, SSR 96-6P, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). The consultant's contrary determinations are not even mentioned in the Decision.

The ALJ next discusses the medical evidence related to Ham's back issues. The ALJ states that, at Ham's July 31, 2014, visit, Dr. Girn "observed that the claimant walked with a limp and had limited range of motion, but the claimant had normal strength." (ECF No. 10 at 34). This statement is true but omits Dr. Girn's findings of: throbbing lumbosacral pain radiating into the leg, exacerbated by bending, sitting, standing, walking, and lifting; numbness in the extremities; deformed posture; and a narrowed oropharynx space. (*Id*. at 710–12). The ALJ notes that Ham

does not appear to have followed up on Dr. Girn's referral to a spine surgeon. (*Id*. at 34). However, the ALJ ignores Dr. Korman's finding that Ham "is not a candidate for [spine] surgery due to his weight." (*Id*. at 674). The ALJ states that Ham did not receive treatment for his back from August 27, 2014 through March 30, 2015. (*Id*. at 34). The ALJ omits the fact that Ham presented to Dr. Girn's office twice during that period, and his back problems were specifically discussed at Ham's January 13, 2015 visit. (*Id*. at 696–701). The ALJ notes that Ham exhibited normal strength and negative straight leg raise tests during his April 10, 2015, visit with Dr. Cha. (*Id*. at 34). The ALJ omits Dr. Cha's notes showing that Ham suffers from "debilitating" back and leg pain at 9/10, exacerbated by sitting, standing, walking, physical activity and bending forward, and intermittent weakness in his left leg. (*Id*. at 747–50).

"An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016). In addition, an ALJ "may not selectively consider medical reports, especially those of treating physicians," nor can she "address mere portions of a doctor's report." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). Unfortunately, this is precisely what the ALJ did in this case. Rather than discuss the actual observations and findings regarding Ham's back pain, the ALJ either seized upon secondary findings like strength measurements or simply ignored treatment visits altogether. While this certainly made for a more compelling Decision, it is inconsistent with the law of this Circuit. The ALJ's cherry-picking is all the more problematic given the Commissioner's arguments to this Court. Addressing the ALJ's failure to discuss Dr. Korman's consultive examination, the Commission argues that "the ALJ reasonably paid more attention to the actual treatment records in evidence, which she did consider in detail." (ECF No. 23 at 13). But the ALJ *did not* consider

9

the treatment records in detail. Instead, she appears to have considered them in detail only to the extent that they supported a finding of no disability.

The Court is also concerned by the extent to which the ALJ relied upon Drs. Sands and Smartt for her RFC determination. An ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical . . . consultant." SSR 96-6P at *4. However, the assessment is to be evaluated "considering all of the factors set out in the regulations for considering opinion evidence." *Id*. The relevant regulation in this case is 20 C.F.R. § 416.927. That regulation requires the following factors in deciding the weight to be given to an opinion: (1) examining relationship; (2) treatment relationship, including the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship; (3) supportability; (4) consistency; and (5) specialization. 20 C.F.R. § 416.927(c).

Weighing the factors in this case demonstrates that the opinions of Drs. Sands and Smartt should have been given little, if any, weight. Neither doctor examined nor treated Ham, reducing the weight to be given their opinions under factors (1) and (2). With respect to supportability, the regulation states that "because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 416.927(c)(3). The RFC assessments provided by Drs. Sands and Smartt have *no explanation whatsoever* for the RFC findings. Instead, the RFC information was simply inputted in a pre-printed form. (*See* ECF No. 10 at 126–28). The Court has no ability to conclude how the RFC assessments were determined or the evidence relied upon in making the assessments.

Consistency is also a concern. Consistency under § 419.927 means the degree to which the medical opinion is consistent with the record as a whole. When the entire record is reviewed

instead of the partial record relied upon by the ALJ, it is impossible to find that the RFC assessments are consistent with Ham's medical information. Nearly every physical activity that Drs. Sands and Smartt determine Ham can perform are the very things that exacerbate his "debilitating" back pain: sitting, standing, lifting, and bending. There is no explanation, either from the doctors or the ALJ, as to how Ham can be expected to stand for an hour per day, sit for six hours per day, and lift up to twenty pounds given the medical evidence in the record. To the contrary, the evidence demonstrates that these activities are largely impossible for Ham. In addition, the ALJ fails to specifically discuss the effect of Ham's obesity on his limitations, an omission that is particularly troubling here given that there is medical evidence that it exacerbates his back issue. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic.").

While Drs. Sands and Smartt are considered experts in the area of RFC assessments, this specialization cannot make up for their clear deficiency in the remaining relevant factors. Therefore, the ALJ violated the applicable regulations in giving these assessments "great weight." (ECF No. 10 at 37).

Given the foregoing, the Court concludes that the ALJ's determination of Ham's RFC is not supported by substantial evidence, and that the ALJ failed to build the logical bridge between the medical evidence and her conclusion. Because the RFC determination directly affects his ability to work, and therefore the determination of his disability, the Decision cannot stand. Instead, this matter must be remanded to the ALJ for a determination of Ham's eligibility based upon the entirety of the record and giving each piece of evidence its proper weight.

## CONCLUSION

For the foregoing reasons, the Social Security Administration's Decision (ECF No. 10 at 28–39) is REVERSED and REMANDED to the ALJ for further proceedings consistent with this opinion.

SO ORDERED on July 2, 2019.

                               s/ Holly A. Brady
                               JUDGE HOLLY A. BRADY
                               UNITED STATES DISTRICT COURT